IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UFP TECHNOLOGIES, INC.

Plaintiff,

v.

JAKOB RUKEL 2015 IRREVOCABLE TRUST 1, JAKOB RUKEL 2015 IRREVOCABLE TRUST 2, BARBARA RUKEL 2015 IRREVOCABLE TRUST 1, BARBARA RUKEL 2015 IRREVOCABLE TRUST 2, ANGELO RUKEL 2011 IRREVOCABLE GIFT TRUST JOHN RUKEL 2011 IRREVOCABLE GIFT TRUST, ANGELO RUKEL, JAKOB RUKEL and JOHN RUKEL,

Defendants.

Civil Action No. 25-1560-CFC

---

**MEMORANDUM ORDER**

Plaintiff UFP Technologies, Inc. bought all the equity interests in AJR Enterprises, LLC (the Company) from Defendants pursuant to a Purchase Agreement dated July 1, 2024. On December 24, 2025, UFP sued Defendants for

indemnification, alleging that two representations made to it in the Purchase Agreement turned out to be false.[1]

Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint (D.I. 16). I have studied the parties' briefing on the motion (D.I.s 17, 25 & 27), and for the reasons set forth below, I will grant the motion.

**Background**

The following background is based on the factual allegations in the Complaint and the terms of the Master Supply Agreement (the Stryker Contract) that the Complaint explicitly relies on and Defendants submitted as an attachment to their briefing in support of the motion. I accept these allegations and terms as true and read them in the light most favorable to plaintiff for the purposes of deciding this Rule 12(b)(6) motion. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly

---

[1] The Complaint alleges that these false representations were made by Defendants. *E.g.*, D.I. 1 ¶¶ 19-20, 34, 39. Under the Purchase Agreement filed with the Complaint the relevant representations were made by the Company, not the Defendants; but the Defendants agreed, subject to various limitations, to indemnify UFP for losses arising out of or relating to breaches of representations made by the Company. *See* D.I. 1, Ex. A at Art. II & § 7.1(a)(i). Thus, the Complaint's characterization is incorrect but arguably shorthand; in any event, Defendants do not object to it, at least at this stage.

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

When UFP bought it, the Company had in place the Stryker Contract—*i.e.*, a Master Supply Agreement with Stryker Corporation and a Stryker affiliate. Stryker is a federal contractor, and UFP alleges that the terms of the Stryker Contract made the Company a federal subcontractor that was required both contractually and by 48 C.F.R. § 52.222-54 to use the federal "E-Verify" system to verify that its employees were eligible to work in the United States. The Company, however, had not used the E-Verify system as of the effective date of the Purchase Agreement. When the Company's employees became direct employees of UFP after the effective date of the Purchase Agreement, UFP initiated an E-Verification process to ensure compliance with the Stryker Contract. At that point, "[n]umerous employees failed or refused to present proper identification" and UFP "lost 310 employees in a 3-month span[.]" D.I. 1 ¶ 24.

UFP alleges that the Company's failure to use E-Verify means that two of the representations made to UFP in the Purchase Agreement were false, and these representations form the bases for the two counts of the Complaint. First, in Section 2.10(c) of the Purchase Agreement, the Company represented in relevant part:

> With respect to each Material Contract and except as set forth on Schedule 2.10(c), (i) none of the Company

> Entities nor, to the Knowledge of Sellers, any other party thereto is in material breach of any Material Contract . . . .

D.I. 1, Ex. A at § 2.10(c). The parties call this the "Material Contract Representation." The Stryker Contract was identified in the Purchase Agreement as a Material Contract. *Id.* at § 2.10(a)(i).

Section 22 of the Stryker Contract provides:

> Compliance with Laws. Stryker is an equal opportunity employer and federal contractor. Consequently, the Parties agree that, to the extent applicable to its performance hereunder, [the Company] shall comply with all applicable federal, state, and local laws, rules and regulations, including without limitation, the laws, rules and regulations referred to in [the Stryker Contract]. . . .

D.I. 25, Ex. 1 § 22. Section 52-222.54 is a federal regulation that was referred to in the Stryker Contract. *Id.* at §§ 7.12 & 27.6, Ex. E. UFP alleges that § 52.222-54 required the Company to use E-Verify, and that the Company's failure to use E-Verify put it in breach of Section 22 of the Stryker Contract, rendering the Material Contract Representation false. This is the claim made in Count I of the Complaint.

Second, in Section 2.19(a) of the Purchase Agreement, the Company represented in relevant part:

> **Applicable Laws.** Each of the Company Entities is, and during the five-year period ending on the Effective Date has been, in compliance in all material respects with all applicable Law, except any immaterial violations that have been corrected. . . .

D.I. 1, Ex. A § 2.19(a). The parties call this the "Compliance with Law Representation." The Purchase Agreement defined "Law" as meaning:

> with respect to any Person, any domestic, federal, state, provincial, municipal, local, national, supranational, or foreign statute or law (whether statutory, common law, or otherwise), constitution, code, convention, ordinance, rule, regulation, order, writ, judgment, decree, ruling, binding directive or guidance of any Governmental Authority (including those of any applicable self-regulatory organization), arbitration award, agency requirement, or any other enforceable requirement of any Governmental Authority that is binding upon or applicable to such Person.

*Id.* at 46. UFP alleges that § 52.222-54 required the Company to use E-Verify, and that its failure to do so rendered this representation false. This is the claim made in Count II of the Complaint.

In response, Defendants argue that § 52-222-54 only requires certain kinds of subcontractors to use E-Verify; that based on the terms of the Stryker Contract, the Company was not the kind of subcontractor to which § 52.222-54 applies; that the Company had no legal or contractual obligation to use E-Verify; and that the Company's representations were therefore true.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing the

plausibility of a claim, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). Nevertheless, the Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *Id.* at 216.

In support of their motion to dismiss, Defendants make two arguments. First, they argue that UFP's claims (which are labelled "Breach of Contract") are barred by the exclusive remedy provisions of the Purchase Agreement, which limit UFP to the remedy of indemnification. UFP bases this argument on *3M v. Neology, Inc.*, C.A. No. N18C-07-089, 2019 WL 2714832, at *8 (Del. Super. Ct. June 28, 2019). In *3M*, a buyer asserted breach of contract claims above and beyond a right to indemnification and argued that its breach of contract claims were unaffected by its right to indemnification. *Id.* at 5. The court enforced a limitation of remedies provision in the contract and dismissed the buyer's breach of contract claims in part, holding that they "survive only as indemnification claims." *Id.*

Here, by contrast, UFP concedes that indemnification is its exclusive remedy and does not argue that its breach of contract claims are anything more than claims for indemnification; *i.e.*, that Defendants breached the contract by failing to indemnify UFP as the contract required. D.I. 25 at 12. That is consistent with the

Complaint, which repeatedly and clearly states that this action is one "for indemnity." D.I. 1 *passim*.

Defendants do not explain in their briefing how they believe the Complaint asserts any breach of contract claims above and beyond claims for indemnity, UFP denies asserting any such claims, and I do not read the Complaint as asserting any. Because UFP has asserted no claims beyond those that Defendants concede they may make, Defendants' first argument provides no basis to dismiss the Complaint. To the extent Defendants' concern is that UFP omitted from its Complaint certain contractual limitations on the amount of indemnification that is available (*see* D.I. 27 at 3–4), Defendants are free to raise those damage limitations if and when they become relevant.

Second, Defendants argue that UFP's claims must fail as a matter of law because the Company had no legal or contractual obligation to use E-Verify. That overstates the Court's inquiry at this stage. The proper question is simply whether the factual allegations of the Complaint are sufficient to create a plausible claim for relief.

Delaware law applies to both the Purchase Agreement and the Stryker Contract. To plead a claim for breach of contract under Delaware law, a plaintiff must, among other things, identify a specific provision of the contract that was breached. *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del.

2007) (citing *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006)). *See also Berg v. C&H Fin. Servs., Inc.*, 2024 WL 1255504, at *3 (D. Del. Mar. 25, 2024) (dismissing breach of contract claim where amended complaint did not identify a contract provision that had allegedly been breached). If a provision of a contract is ambiguous, the plaintiff is entitled at this stage to the benefit of any reasonable interpretation of the ambiguous provision that would allow it to state a claim. *LGM Holdings, LLC v. Schurder*, 340 A.3d 1134, 1143 (Del. 2025).

In Count I, UFP alleged that the Material Contract Representation was false because the Company breached the Stryker Contract. The only provision of the Stryker Contract that UFP alleged the Company breached is Section 22. In Section 22, the Company promised Stryker that "to the extent applicable to its performance hereunder" it would "comply with all applicable federal . . . regulations, including without limitation, the . . . regulations referred to in [the Stryker Contract]." The only regulation UFP alleged the Company failed to comply with is § 52.222-54. It is undisputed that that regulation was referred to in the Stryker Contract. Accordingly, the relevant question for Count I is whether the Complaint alleges facts that plausibly imply that the Company breached Section 22 by failing to comply with § 52.222-54 to the extent applicable to its performance under the Stryker Contract.

UFP alleges that § 52.222-54 "requires the Company to E-Verify employee eligibility to work in the United States" (D.I. 1 ¶ 22), but UFP does not point to any language in § 52.222-54 or any legal authority that supports this allegation. On its face, § 52.222-54 does not impose any obligation on any person or entity other than the federal government. Instead, it sets forth a clause that §§ 22.1802(b) and 22.1803 together require "contracting officers" of the federal government to include in certain solicitations and contracts. *See* 48 C.F.R. § 22.1802(b) (requiring "[c]ontracting officers" to include in solicitations and contracts "as prescribed at 22.1803" requirements that federal contractors, among other things, enroll in E-Verify, use E-Verify to verify the employment eligibility of all employees assigned to the contract, and include such verification requirements in the contractor's subcontracts); 48 C.F.R. § 22.1803 (requiring contracting officers to "[i]nsert the clause" in § 52.222-54 in certain solicitations and contracts). The clause set forth in § 52.222-54(b) includes promises by the contractor to enroll in and use E-Verify. 48 C.F.R. § 52.222-54(b). It also includes a promise by the contractor to include the requirements of the clause in any subcontract it enters into for certain services or construction. 48 C.F.R. § 52.222-54(e).[2]

---

[2] It appears that Stryker and the Company recognized this regulatory structure. Section 27.6 and Exhibit E of the Stryker Contract provide an extensive list of clauses set forth in federal contracting regulations, including § 52.222-54, that are "incorporated by reference in this Agreement with the same force and effect as though set forth herein in full text, and the [Company] is obligated to comply with

It is not clear what it means for a person to promise to comply with a regulation that sets forth terms federal contracting officers must include in certain contracts. The parties have not addressed this question in their briefs. At least in that respect Section 22 of the Stryker Contract is ambiguous. UFP's interpretation appears to be that the Company's promise to Stryker in Section 22 to comply with § 52-222-54 meant that the Company promised to comply with the terms of the clause set forth in that regulation as if those terms were included in the contract. Defendants do not offer a different interpretation. I will therefore assume for purposes of the motion that UFP's interpretation is reasonable.

But whatever it may have meant, the Company's promise to comply with the regulation was qualified by the phrase "to the extent applicable to [the Company's] performance hereunder." Thus, to state a claim that the Company was in breach of Section 22 of the Stryker Contract by failing to comply with the terms of the clause set forth in § 52.222-54, UFP must still allege facts that plausibly imply that those terms were "applicable to [the Company's] performance hereunder."

Defendants argue that the clause set forth in § 52.222-54 was not "applicable to the Company's performance" because, as a federal contractor, Stryker was only obligated to include the clause in subcontracts for services or construction, whereas

these clauses to the extent applicable." D.I. 25, Ex. 1 at § 27.6, Ex. E. The Complaint did not allege that the Company breached this provision of the Stryker Contract.

the Stryker Contract was for goods. D.I. 17 at 16–18. In response, UFP's answering brief invites me to examine various terms of the Stryker Contract to conclude that the Stryker Contract also required it to provide services (*i.e.*, "the full panoply of supply-chain management services"). D.I. 25 at 7–8. But both the Complaint and UFP's answering brief entirely ignore the key qualifying phrase "to the extent applicable to [the Company's] performance hereunder." The Company's "performance" under the Stryker Contract—that is, what it actually did to fulfill its contractual obligations—is a question of historical fact that cannot be answered from the face of the contract. Instead, I must look to the Complaint itself to see what UFP alleged it actually did under the Stryker Contract in order to understand whether the clause set forth in § 52.222-54 might have been "applicable to its performance." In its Complaint, UFP does not mention services, and instead alleges only that "[p]ursuant to the Stryker Contract, the Company manufactures and supplies certain products for Stryker." D.I. 1 ¶ 22. That performance by the Company as a federal subcontractor—making and selling goods—would not, by itself, be a sufficient basis to make the terms of the clause set forth in § 52.222-54 applicable to it. Accordingly, UFP has not alleged a sufficient basis for me to conclude that the Company's failure to use E-Verify caused it to be in breach of Section 22 of the Stryker Contract, rendering false the Material Contract Representation. I will therefore dismiss Count I.

In Count II, UFP alleged that the Compliance with Law Representation was false because the Company failed to comply with § 52.222-54 by using E-Verify. I need not accept that legal conclusion as true for purposes of this motion, but must look for well-pleaded facts making that legal conclusion plausible.

As discussed above, on its face § 52.222-54 does not impose any obligation on anyone other than federal contracting officers. UFP does not point to any authority suggesting otherwise. But Defendants do not argue that Count II should be dismissed on that basis. Instead, Defendants make two other arguments.

First, Defendants argue that the regulation "only directly governs federal contractors, not their subcontractors," and that the Company is only a subcontractor. D.I. 17 at 12. Defendants argue that the regulation requires contractors to impose upon certain subcontractors a contractual promise to use E-Verify, but that this "flow-down obligation" is only the prime contractor's obligation and is "not a legal duty imposed on its subcontractors." *Id.* at 14. Thus, Defendants argue that the regulation at most would have required Stryker to obtain from the Company a contractual promise owed to Stryker, but that in no event could "the United States government . . . punish the Company for failing to E-Verify." D.I. 27 at 7. Defendants argue that a contractual promise to Stryker is not "law" and therefore does not implicate the Compliance with Law Representation.

Second, Defendants argue that, in all events, the Company did not have even a contractual promise to Stryker (much less a legal duty enforceable by the government) because the Stryker Contract was a contract for goods and therefore the Company was not the kind of subcontractor as to which Stryker had promised the government it would impose the "flow-down obligation."

In its answering brief, UFP does not respond to Defendants' argument that a subcontractor's mere contractual promise to the prime contractor to use E-Verify does not create the kind of "legal duty" that, if violated, would cause a breach of the Compliance with Law Representation. Instead, UFP conflates Counts I and II and argues that because the Company promised to provide various services to Stryker (rather than merely goods), it was the kind of subcontractor to which a "flow-down obligation" to use E-Verify would apply. UFP concludes that the Company's failure to use E-Verify caused it to be in breach of both the Material Contract Representation and the Compliance with Law Representation without addressing how a breach of a contractual obligation to Stryker (assuming it existed) would put the Company in violation of § 52.222-54, or otherwise in breach of the Compliance with Law Representation. D.I. 25 at 15–19.

My analysis of Defendants' first argument is complicated by the fact that neither side addresses the meaning the parties agreed to give the defined term "Law" that is incorporated in the Compliance with Law Representation. But I

need not decide at this point whether the parties' definition of "Law" is broad enough to include a contractual promise by the Company to Stryker to comply with the terms of the clause set forth in § 52.222-54. I need not reach that question because the Complaint does not contain allegations sufficient to state a plausible claim that the Company made such a contractual promise.

UFP's brief identifies two places in the Purchase Agreement where the parties referenced § 52.222-54: Section 7.12 and Exhibit E. D.I. 25 at 15. In both cases, the reference to § 52.222-54 is qualified by the phrase "to the extent applicable to its performance" under the agreement. (For Section 7.12, this qualifying language occurs within the section itself. For Exhibit E, which is incorporated into the Purchase Agreement by Section 22.4, the qualifying language occurs in Section 22, as discussed above.)

As discussed above with respect to Count I, this qualifying language requires me to consider the Company's actual performance under the Stryker Contract. And, as noted above, the only performance that UFP alleges in the Complaint is the making and selling of goods. That performance would not be sufficient to make § 52.222-54 "applicable to its performance." Accordingly, I will dismiss Count II.

Finally, Defendants argue that dismissal of Count II should be without leave to amend, and UFP seeks leave to amend in the event I find the allegations of the

Complaint insufficient. I have no basis to conclude at this juncture that UFP is unable to allege facts creating a plausible claim for indemnity under either the Material Contract Representation or the Compliance with Law Representation. Accordingly, UFP may file an Amended Complaint, and Defendants may then respond as they see fit.

NOW THEREFORE, at Wilmington on this Twenty-ninth Day of September in 2026, it is HEREBY ORDERED that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (D.I. 16) is GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE.

CHIEF JUDGE